UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **BRENDA DIANE GELBER,** | ] |
| Plaintiff, | ] |
| vs. | ] CV 11-J-3145-NE |
| **MICHAEL J. ASTRUE,**<br>**Commissioner of the Social**<br>**Security Administration**, | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal and remand of the final decision of the Commissioner. All administrative remedies have been exhausted.

The plaintiff applied for Disability Insurance Benefits on November 9, 2009, alleging an inability to work since June 2004 (R. 29, 72), due to Meniere's disease (R. 72), which causes problems walking and hearing, as well as blurry vision, dizziness and nausea (R. 35, 42-43). The application was denied by an Administrative Law Judge on February 25, 2011 (R. 22). The ALJ's determination became the final decision when the Appeals Council denied the plaintiff's request for review (R. 1-3).

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the correct legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir.1983). The court has carefully reviewed the entire record in this case and is of the opinion that the Commissioner's decision is supported by substantial evidence and that the proper legal standards were applied in reaching that decision.

The medical evidence in the record at the time of the hearing demonstrates that the plaintiff was first diagnosed with Meniere's disease in June 2004 (R. 206). Dr. Drew Locando removed the plaintiff from work through August 20, 2004 (R. 209-211). At an August 19, 2004, follow up visit, Dr. Locando noted the plaintiff was still unable to drive, but did note "marked improvement in ear pain" (R. 213). In September, the plaintiff reported still being unable to drive, but Dr. Locando's records reflect that the plaintiff was making progress (R. 214). His October 7, 2004, record reflects a referral to an ophthalmologist for further treatment (R. 216). No further treatment records from Dr. Locando are in evidence and no medical records from October 2004 to April 2008 are in evidence.

Dr. P.J.M. Reddy first saw the plaintiff in April 2008 (R. 235). There is one reference to lightheadedness and dizziness in his records in June 2008 (R. 233-235), a complaint of fatigue and hip pain in April 2010, and a notation that the plaintiff applied for disability due to Meniere's disease (R. 290),

The plaintiff was next treated by Dr. Light, on referral from Dr. Reddy (R. 226-227). Dr. Light's May 2009 record reflects the plaintiff reported severe episodes of vertigo once or twice a year, with progressive hearing loss (R. 227). His next record, in March 2010, notes a history of Meniere's disease and that the plaintiff has had "many attacks, approximately once a month, maybe more frequently depending on the weather change" (R. 285). The plaintiff was also seen by Dr. George Godwin in the same practice as Dr. Light, as reflected by some of the medical records (R. 284). Hearing loss and dizziness were noted, and in June 2010 the plaintiff reported she thought the frequency was getting worse (R. 284). The plaintiff was referred to The Balance Center for testing (R. 273-278) and also referred to physical therapy (R. 268-271).

A consultative examination in January 2010 reflects a diagnosis of Meniere's disease and plaintiff's report that she does light housework as able, drives, shops with assistance, has no limitations on sitting, can stand for 20 minutes and walk two blocks (R. 248-249). Morbid obesity was also noted (R. 249).

In a January 2011 report completed by Dr. George Godwin, he noted that the plaintiff suffered from Meniere's disease, with a history of frequent attacks of balance disturbance, progressive hearing loss, and tinnitus (R. 263). He recorded plaintiff's attacks as being two times per week, but three times per month, lasting for a few hours to a couple of days (R. 264). He opined that the plaintiff would be capable of low stress jobs and moderate stress (R. 266).

Based on his review of the evidence, the ALJ determined that the plaintiff suffered from the severe impairments of Meniere's disease and obesity but did not have an impairment of combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, through her date last insured, that being December 31, 2009 (R. 11, 14). The ALJ specifically considered Listing 2.07 but found the plaintiff did not meet the specific requirements of that Listing[1] as of her date last insured (R. 14).

---

[1] Listing 2.07 requires:

Disturbance of labyrinthine-vestibular function (including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:

    A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and

    B. Hearing loss established by audiometry.

20 CFR Pt. 404, Subpt. P, App. 1. The plaintiff had the required caloric testing in June 2010, which found responses normal bilaterally (R. 272). The Audiologist opined that some of the plaintiff's symptoms sounded like migraine (R. 272). Dr. Godwin stated in January 2011 that normal vestibular/caloric/ECNOG results do "not necessarily [rule out] Meniere's. In her case, she prob[ably] has bilat[eral] Meniere's which may be the reason for symmetrical (normal) ... testing" (R. 263).

3

The ALJ found that the plaintiff could not return to her past work, which was in the "light" exertional range, but that the plaintiff could perform a full range of sedentary work activities (R. 20-21). The ALJ considered the plaintiff's date of birth of December 28, 1970, her high school education, her ability to perform a limited range of sedentary work, and the testimony of the Vocational Expert in concluding that the plaintiff was not disabled at any time through her date last insured (R. 20-21).

The plaintiff argues that the ALJ's determination that the plaintiff could perform a limited range of sedentary activity was unsupported by the plaintiff's treating physicians' records. Plaintiff's brief at 8-14. The court disagrees. The ALJ was limited to the time period prior to the plaintiff's date last insured. As of that date, the evidence in the record supports the determination that the plaintiff could perform work as noted by the ALJ. Accordingly, the decision of the Commissioner must be affirmed.

Done, this 4th day of April, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE